## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PROGRESSIVE SPINE & ORTHOPAEDICS, LLC** | Civ. No. 17-536 (KM)(MAH) |
| **Plaintiff,** | **OPINION** |
| **v.** | |
| **ANTHEM BLUE CROSS BLUE SHIELD,** | |
| **Defendant.** | |

This is the latest chapter in the quest of out-of-network health care providers to be reimbursed by ERISA plans at in-network rates. The providers first struggled to be heard in federal court, finally persuading the Third Circuit that they could, via assignment, assert the rights of their patients. The Plans in many cases have responded by adopting anti-assignment provisions. Increasingly, providers have preferred to pursue claims in state court. To avoid ERISA preemption and get around the anti-assignment provision, the provider here has asserted what it deems an independent state-law contract claim on behalf of itself, rather than its patient. The insurer, citing ERISA preemption, has removed the case to federal court and promptly moved to dismiss on, *inter alia*, standing grounds. The result, from the insurer's point of view, should be that the provider cannot sue anywhere. The provider here agrees that it lacks derivative standing, but nevertheless seeks remand to a state forum where it can assert its own rights. Whether its allegedly independent state-law claims are viable, it says, is for the state courts to decide.

Progressive Spine & Orthopaedics, LLC ("Progressive"), an out-of-network health care provider, brings this state-law action to recover reimbursement from the claims administrator for the patient's health plan, Anthem Blue Cross Blue Shield ("Anthem"). Progressive alleges that Anthem underpaid on its claim

1

for reimbursement for surgery performed on, and billed to, its patient, B.G. Progressive's state-law complaint asserts three claims against Anthem: (1) breach of contract; (2) quantum meruit; and (3) unjust enrichment. Anthem removed this action from state court on the premise that this Court had subject matter jurisdiction, because all state law claims were completely preempted by Section 502(a) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Anthem now moves under Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief may be granted. Progressive cross-moves for the case to be remanded to state court, and for reimbursement of attorney's fees. Because the motion to remand implicates this Court's subject matter jurisdiction, I will address it first.

For the reasons stated herein, I will grant Progressive's motion to remand, but deny its motion for attorney's fees. Anthem's motion to dismiss is denied as moot.

### I. Procedural History[1]

The Complaint was originally filed by Progressive in New Jersey Superior Court, Bergen County, on December 8, 2016. (Cplt.). It alleges that Progressive "proceed[s] on its own individual claims" against Anthem. The evident intent is to state that Progressive is asserting its own rights, not those of its patient, B.G. Anthem "was engaged in the business of providing or administering healthcare insurance benefits for [B.G.]" (Cplt. ¶ 3 and 4). The Complaint contains three state contract-related claims against Anthem: (1) breach of contract; (2) quantum meruit; and (3) unjust enrichment. (Cplt. ¶¶ 15 to 29).

On January 26, 2017, Anthem filed a notice of removal to federal court pursuant to 28 U.S.C. § 1441(a) and (c). (Notice of Removal). The Notice states that because Progressive is seeking to recover "increased benefit payments" under a health benefits plan which is governed by ERISA, the doctrine of

---

[1]    Certain key record items are abbreviated as follows:

   Anti-Assignment Clause = Benefit Description p. 57

   Assignment of Benefits =   ECF no. 1 at 23 (Ex. C to Notice of Removal)

   Benefit Description =        Benefit Description Manual of Volt Plan, Ex. A, ECF no. 5-2

   Claim Form =                 Health Insurance Claim Form, Ex. C to Pl. Remand Brf.

   Cplt. =        Complaint, ECF no. 1 at 12 (Ex. A to Notice of Removal)

   Def. Brf. =    Brief of defendant in support of motion to dismiss, ECF no. 5-1

   Def. Reply =  Reply Brief of defendant in further support of its motion to dismiss and in opposition to plaintiff's motion to remand, ECF no. 13

   Genovese Dec. = Declaration of Amanda Genovese, ECF no. 13-1

   Notice of Removal= ECF no. 1 at 1

   Pl. Brf. =     Brief of plaintiff in opposition to motion to dismiss, ECF no. 11

   Pl. Remand Brf.= Brief of plaintiff in support of motion to remand, ECF no. 10-1

   Pl. Reply =    Reply Brief of plaintiff reply brief in further support of its motion to remand and for attorney's fees and costs, ECF no. 14

   Sheridan Dec. = Declaration of Kori Sheridan, ECF no. 10-2

complete preemption confers federal question subject matter jurisdiction under 28 U.S.C. § 1331. (Notice of removal, ¶¶ 7 to 13).

On February 16, 2017, Anthem filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint with prejudice for failure to state a claim. (Def. Brf.). In particular, Anthem maintained that Progressive's claims, all sounding in state law, should be dismissed because they are preempted by ERISA. (Def. Brf. at 4 to 6). Anthem argued in the alternative that, even setting aside preemption, the claims were deficient.  (Def. Brf. 6–9).

On April 3, 2017, Progressive filed an opposition to Anthem's motion to dismiss, and a cross-motion to remand the case to state court and award attorney's fees incurred as a result of the improper removal. (Pl. Remand Brf.; Pl Brf.). The cross-motion to remand asserted that this court lacks federal subject matter jurisdiction because ERISA preemption does not apply. (Pl. Remand Brf. at 9 to 19).

On April 10, 2017, Anthem submitted a reply memorandum of law in further support of its motion to dismiss and in opposition to Progressive's motion to remand. (Def. Reply). On May 8, 2017, Progressive filed a reply brief in further support of its motion to remand and for attorney's fees and costs. (Pl. Reply).

On May 9, 2017, without having previously requested leave, Anthem filed a surreply letter. (ECF no. 15). On May 11, 2017, without have previously requested leave to file, Progressive filed a letter in response to the surreply. (ECF no. 16). On that same date, without having previously requested leave, Anthem filed a letter in response to Progressive's letter, and Progressive (of course) filed another letter in response to that. (ECF no. 17 and 18).[2] On August 24, 2017, Progressive filed a letter informing the court that *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna U.S. Healthcare*, No. 15-CV-2007

---

[2]      Under Local Civil Rule 7.1(d)(6), "no sur-replies are permitted without permission of the Judge or Magistrate Judge to whom the case is assigned."

KBF, 2015 WL 2183900 (S.D.N.Y. May 11, 2015), relied upon by Anthem in its opposition brief, had been overruled. (ECF no. 21).

## II. Facts

Progressive is a health care provider specializing in spinal orthopedics. (Pl. Remand Brf. at 6). Located in Bergen County, New Jersey, it employs one orthopedic surgeon. (Cplt. ¶ 1; Pl. Remand Brf. at 6).

On October 24, 2014, Progressive's surgeon, with the aid of a physician assistant, provided medical services to B.G. The services consisted of spinal surgery and "related procedures". (Cplt. ¶ 10; Sheridan Dec. ¶ 8).

B.G. is a member of an employer-sponsored health benefits plan: specifically, the Blue Cross Blue Shield Select Plus PPO Option for Volt Information Sciences, Inc. ("Volt Plan" or "the Plan"). (Def. Brf. at 2). Anthem is the Claims Administrator for the Volt Plan. (Def. Brf. at 2; Benefit Description at 82). The parties do not dispute that the VOLT Plan is governed by ERISA.

At B.G.'s initial visit to Progressive, B.G. provided Progressive with a copy of his Blue Cross Blue Shield card. (Sheridan Dec. ¶ 3; Ex. A to Sheridan Dec.).[3] As an out-of-network provider, Progressive does not have any written agreement with Anthem for payment of services. (Cplt. ¶ 11). According to Progressive, before providing medical services to B.G., one of its representatives contacted Anthem by telephone to gain information about payment of services. (Sheridan Dec. ¶¶ 5–7).[4]

A Progressive representative allegedly spoke with an Anthem representative on three occasions. (Sheridan Dec. ¶¶ 5–7). According to

[3]     The back of the insurance card includes the following statement: "Anthem Blue Cross and Blue shield, an independent licensee of the Blue Cross and Blue Shield Association, provides administrative claims payment services only and does not assume any financial risk or obligation with respect to claims. Anthem Blue Cross and Blue Shield is the trade name of Anthem Insurance Companies, Inc." (Ex. A to Sheridan Dec.).

[4]     A Declaration was submitted by Kori Sheridan, Progressive's practice manager. (Sheridan Dec. ¶1). When describing who called Anthem representatives, Ms. Sheridan's Declaration uses the word "we." (Sheridan Dec. ¶¶ 5, 6, and 7). It is therefore unclear exactly who spoke to Anthem representatives, and I will use "a Progressive representative" to describe the party to those calls.

Progressive's practice manager, on May 7, 2014, Progressive "called to confirm the medical benefits that Patient B.G.'s insurer would pay." (*Id.* ¶ 5). Progressive alleges that an Anthem representative stated that Anthem "paid the 'usual, customary, and reasonable [("UCR")]' rate', and the patient a 30% co-insurance (meaning that the patient was responsible for 30% of the billed amount after the deductible, and the insurer would pay the other 70%)." (*Id.*).

On May 8, 2014, Progressive received an assignment of benefits from B.G. (Notice of Removal Ex. C).

Then, on October 6, 2014, prior to B.G.'s surgery, Progressive called to "reconfirm the medical benefits that [Anthem] would pay." (Sheridan Dec. ¶ 6). Anthem reiterated the information that it had already provided on May 7, 2014. (Sheridan Dec. ¶ 6).

On October 8, 2014, Progressive "called to confirm that [Anthem] would pay for the particular surgery Progressive sought to perform on Patient B.G." (Sheridan Dec. ¶7). According to Ms. Sheridan, "[w]e were told that we could perform the procedure, and that no other medical documentation was required in order to pre-authorize it." (Sheridan Dec. ¶7).

Relying on Anthem's representations, on October 24, 2014, the Progressive doctor performed spinal surgery on B.G. (Cplt. ¶ 10; Sheridan Dec. ¶ 8).

Five days after B.G.'s surgery, Progressive submitted two health insurance claim forms: one for the surgeon's services and the other for the physician assistant's services. (Sheridan Dec. Ex. C; Claim Form). The total charge claimed for the surgeon was $60,453. (Sheridan Dec. Ex. C; Claim Form). Progressive asserts that only $2,381.97 of the surgeon's bill has been reimbursed by Anthem. (Sheridan Dec. ¶ 14; Sheridan Dec. Ex. F; ECF no. 10 Ex. F).[5] Progressive appealed the payment decision through Anthem's

---

[5]    The bill of the physician assistant was ultimately negotiated and is not at issue here. Ms. Sheridan "negotiated a partial payment with one of Anthem's agents, the National Care Network." (Sheridan Dec. ¶ 12). That agreement was finalized on

administrative appeals process by sending a letter from counsel dated April 1, 2016. (Genovese Decl., Ex. 1). The outcome of the appeal is not specifically documented, but the implication is that it was denied.

On December 8, 2016, Progressive filed this action in the Superior Court of New Jersey, Law Division, Bergen County. (Cplt.)

### III.   Removal and Remand in the Context of ERISA Preemption

Pursuant to the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed by the defendants to the appropriate district court where the action is pending. 28 U.S.C. § 1441(a). Removal is not appropriate if the case does not fall within the district court's original federal question jurisdiction and the parties are not diverse. *See U.S. Express Lines Ltd. v. Higgins,* 281 F.3d 383, 389 (3d Cir. 2002) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 8 (1983)); *see generally* 28 U.S.C. §§ 1331, 1332(a).

The Third Circuit has cautioned that 28 U.S.C. § 1441 must be strictly construed against removal. *Samuel–Bassett,* 357 F.3d at 396, 403 (citing *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied,* 498 U.S. 1085 (1991). Accordingly, all doubts should be resolved in favor of remand. *Id.* A party opposing remand must show that removal was proper. *Boyer,* 913 F.2d at 111.

A party may move to remand a civil action to state court "at any time" based on the federal court's lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). As in any federal court case, "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot,* 507 F.3d 188, 193 (3d Cir. 2007) (citing *Samuel–Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 396 (3d Cir. 2004)).

---

November 18, 2014 and on or around December 9, 2014, Anthem paid Progressive the negotiated amount. (Sheridan Dec. ¶ 12; Sheridan Dec. Ex. D and E).

In general, under the well-pleaded complaint rule, a cause of action "arises under" federal law, and removal is proper, only if a federal question is presented on the face of a properly pleaded complaint. *Dukes v. U.S. Healthcare,* 57 F.3d 350, 353 (3d Cir. 1995) (citing *Franchise Tax Bd.,* 463 U.S. at 9–12). The complete preemption doctrine, however, may be viewed as creating a quasi-exception to the well-pleaded complaint rule: "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is *necessarily* federal in character." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64 (1987) (emphasis added); *Dukes,* 57 F.3d at 354 (citing *Taylor*); *see generally Goepel v. Nat'l Postal Mail Handlers Union,* 36 F.3d 306, 309–13 (3d Cir.1994) (discussing the Court's complete-preemption jurisprudence). In such a case, even a facial state claim will be deemed to present a federal question.

> The complete preemption doctrine applies when

> the pre-emptive force of [the federal statutory provision] is so powerful as to displace entirely any state cause of action [addressed by the federal statute]. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [the federal provision].

*Dukes,* 57 F.3d at 354 (quoting *Franchise Tax Bd.,* 463 U.S. at 23). When the federal law completely preempts a state law cause of action, a claim within the scope of that federal law is federal in nature, even if it is pleaded in terms of state law, and it is therefore removable under 28 U.S.C. § 1441. *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 8 (2003).

Although ERISA preemption is broad, it is not all-encompassing. The Supreme Court has "addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Inc. Co.,* 514 U.S. 645, 654 (1995). Thus, even though "[t]he governing text of ERISA is clearly expansive" in prescribing preemption for any state law claims that "relate to any employee

benefit plan," the Supreme Court did not extend "relate to" "to the furthest stretch of its indeterminacy." *Id.* at 655 (internal citations and quotations omitted).

### IV. Analysis

Here, a federal question is not presented on the face of the complaint. Progressive is suing in its individual capacity as a third-party health care provider, not in its derivative capacity as an assignee of the patient's ERISA plan benefits. Its state-law claims are based on alleged independent promises or obligations of Anthem to Progressive itself. Such claims, in Progressive's view, lie outside the scope of the beneficiary/Plan relationship. Anthem's notice of removal is based on its argument that Progressive's claims are completely preempted under Section 502(a) of ERISA. The central question, then, is whether the doctrine of complete preemption encompasses these allegedly independent claims.

### A. Complete Preemption

Two conditions must be met for a claim to be completely preempted under Section 502(a): (1) the plaintiff could have brought the claim under Section 502(a) of ERISA, *and* (2) there is no independent legal duty supporting the plaintiff's claims. *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 400 (3d Cir. 2004). *See also Aetna Health Inc. v. Davila,* 542 U.S. 200, 210 (2004) (holding that state law claim is completely preempted when action could have been brought under Section 502(a)(1)(B) and no other legal duty independent of ERISA exists). "Because the [*Pascack*] test is conjunctive, a state-law cause of action is completely preempted only if both of its prongs are satisfied." *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey,* 760 F.3d 297, 303 (3d Cir. 2014). As the removing party in this case, Anthem bears the burden of establishing both prongs. *Pascack,* 388 F.3d at 401.

Courts have further disaggregated the first prong of the *Pascack* test into two inquiries:

1(a) Whether the plaintiff is the *type* of party that can bring a claim pursuant to Section 502(a)(1)(B), and

1(b) whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to Section 502(a)(1)(B).

*Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011). *See also McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145-46 (2d Cir. 2017); *Emergency Physicians of St. Clare's v. United Health Care*, Civ. A. No. 14-404 (ES), 2014 WL 7404563, at *2–6 (D.N.J. Dec. 29, 2014).

I find that complete preemption does not apply, because Anthem fails to satisfy the first prong of the conjunctive *Pascack* test.

### i. *Pascack* Prong 1

#### a) Standing/Type of Party

Subpart a of the first *Pascack* prong is not satisfied. Anthem has not established that Progressive "is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B)." *Montefiore*, 642 F.3d at 328.

Under Section 502(a) of ERISA, only "a participant or beneficiary" may bring a civil action to recover benefits or enforce rights under the plan. 29 U.S.C. § 1132 (a). However, such a plan beneficiary may confer a derivative right to sue upon a health care provider *via* a valid assignment. *N.J. Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015); *American Chiropractic Ass'n v. American Specialty Health Inc.*, 625 F. App'x 169, 175 (3d Cir. 2015); *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014). By assignment, the provider stands in the shoes of the participant or beneficiary who is its patient.

Here, though, Progressive asserts that it does *not* possess a valid assignment. Although it received an assignment of benefits from B.G., the Volt Plan has an anti-assignment clause which expressly prohibits B.G. from assigning his rights or benefits. (Pl. Remand Brf. at 15).

Anthem characterizes Progressive's argument as irrelevant. According to Anthem, the sole consideration is a more generic one: whether the plaintiff is the *type* of party that *can* assert standing. Whether this *particular* assignment is valid *under the terms of the Volt Plan,* says Anthem, is not an appropriate consideration at this stage. (Def. Reply at 7). If the claim is that the anti-assignment clause must be disregarded at this stage (only to be reasserted with a vengeance later), I disagree.

Anthem's argument rests on *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna U.S. Healthcare,* No. 15-CV-2007 KBF, 2015 WL 2183900 (S.D.N.Y. May 11, 2015), a case which has recently been vacated by the Second Circuit.[6] Given the factual similarities between this case and *McCulloch,* and the Second Circuit's explicit rejection of the argument now being proffered by Anthem, some discussion is warranted.

In *McCulloch,* an out-of-network health care provider brought a state promissory-estoppel action against Aetna. The provider claimed that it received an independent promise from Aetna that it would be reimbursed at the UCR rate for two knee surgeries provided to the insured. 857 F.3d at 144. Aetna removed the case to federal court, arguing that the health care provider's complaint was completely preempted by ERISA. *Id.* at 145. The provider then filed a motion to remand, which was denied by the District Court based in part on its conclusion that an attempted assignment between the patient and the health care provider satisfied the first prong. *Ibid.* "Whether the assignment is valid *under the terms of the ERISA plan at issue,*" said the District Court, "is a question to be decided once an ERISA claim is before the Court.'" *Ibid.*

The United States Court of Appeals for the Second Circuit reversed, holding that the out-of-network provider's claim was not completely preempted by ERISA. *Id.* at 152. In evaluating the first prong of the *Pascack* test,[7] the

---

6       Anthem submitted its brief on April 10, 2017, before the Second Circuit had issued its May 18, 2017 decision.

7       I simplify. From *Davila,* 542 U.S. at 210, the Second Circuit derived an analytical framework similar to that prescribed by the Third Circuit in *Pascack. See*

Second Circuit concluded, the validity of an assignment of a claim is an appropriate consideration. *Id.* at 147-48. It highlighted the practical drawbacks of holding otherwise:

> If we were to ignore that the health care plan prohibits an assignment to [the provider] in determining whether his claim is preempted, this would lead to a result that is both unjust and anomalous: [the provider] would be barred from pursuing state-law claims in state court on preemption grounds and from pursuing an ERISA claim in federal court for lack of standing. McCulloch—and other third-party providers in similar situations—would be left without a remedy to enforce promises of payment made by an insurer.

*Id.* at 148. The Second Circuit added that such a ruling would not advance the purpose of ERISA because the risk of non-payment would discourage medical providers from providing treatment or would lead them to "otherwise screen patients who are participants in certain plans." *Ibid.*

I agree, and I adopt the *McCulloch* Court's reasoning. Finding the anti-assignment clause relevant, I will consider it in evaluating the first prong of the *Pascack* test.

Progressive received an assignment of benefits from B.G. (Notice of Removal Ex. C). That **"One Time Authorization Form"** provides:

- **Assignment of benefits**:
  I hereby authorize payment of medical insurance benefits otherwise payable to me, be made directly to [the doctor]. I authorize the release of any medical or other pertinent information necessary to determine these benefits for payable services rendered by [the doctor]. I authorize [the doctor] to submit appeals on my behalf for any denied benefits to my medical insurance carrier.

- I Give Progressive Spine & Orthopaedics authorization to appeal any claim on my behalf. I agree to allow any of my medical documents to be released that is pertinent to the appeal. Any

---

*Montefiore*, 642 F.3d at 327. So the test applied by the Second Circuit, although identical to the *Pascack* test, would better be described as the *Montefiore* test.

further negotiations should go through Progressive Spine & Orthopaedics.

(Assignment of Benefits)

A separate page entitled "ASSIGNMENT OF BENEFITS" states:

I hereby authorize payment of medical insurance benefits otherwise payable to me, be made directly to [the doctor].

I authorize the release of any medical or other pertinent information necessary to determine these benefits for payable services rendered by [the doctor].

I authorize [the doctor] to submit appeals on my behalf for any denied benefits to my medical insurance carrier.

(*Id.*)[8]

However, B.G.'s health care plan, the Volt Plan, has an anti-assignment clause in the benefit description booklet. It provides as follows:

You authorize the Claims Administrator, on behalf of the Employer, to make payments directly to Providers for Covered Services. The Claims Administrator also reserves the right to make payments directly to You. Payments may also be made to, and notice regarding the receipt and/or adjudication of claims, an Alternate Recipient, or that person's custodial parent or designated representative. Any payments made by the Claims Administrator will discharge the Employer's obligation to pay for Covered Services. *You cannot assign Your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support order" as defined by ERISA or any applicable Federal law.*

---

[8]      Progressive also points to a standard claim form which contains an assignment of payment for medical benefits. First, Box 13 of the form, if filled in, requires the insured to authorize the payment of medical services. B.G. signed both of the completed forms submitted by Progressive. Box 13 so indicates by stating "signature on file." (Claim Form). Second, in box 27, the form asks if the provider will accept assignment. Progressive checked "yes" in response to that question. (*Id.*)  This additional form, assuming it is properly considered, is not essential to the analysis here.

13

Once a Provider performs a Covered Service, the Claims
Administrator will not honor a request to withhold payment of the
claims submitted.

*The coverage and any benefits under the Plan are not assignable by
any Member without the written consent of the Plan, except as
provided above.*

(Anti-Assignment Clause)(emphasis added).

Courts in this district have held that such an anti-assignment provision
is effective. It thus precludes a finding that a provider possesses derivative
standing based on such an assignment. *See Cohen v. Indep. Blue Cross,* 820 F.
Supp. 2d 594, 603-07 (D.N.J. 2011); *Kaul v. Horizon Blue Cross Blue Shield of
New Jersey,* 2016 WL 4071953 (D.N.J. Jul. 29, 2016); *Advanced Orthopedics
and Sports Medicine v. Blue Cross Blue Shield of Massachusetts,* 2015 WL
4430488,*4 (D.N.J. Jul. 20, 2015).

I find that the anti-assignment clause in B.G.'s Health Benefit Plan is
facially valid, enforceable, and applicable to B.B.'s assignment to Progressive.
The unambiguous language of that clause prohibits B.G. from assigning his
benefits. Therefore, subpart (a) of the first prong of the *Pascack* test is not met.

### b) Subpart b - Actual claim as a colorable claim

Subpart b of the first *Pascack* prong is also not satisfied. Anthem has not
established that that the *actual claim* asserted by Progressive can be
considered a colorable claim for benefits under Section 502(a)(1)(B). *Montefiore,*
642 F.3d at 328.

A claim is subject to ERISA preemption if it is brought by a participant or
beneficiary "to recover benefits due to him under the terms of his plan, to
enforce his rights under the terms of the plan, or to clarify his rights to future
benefits under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(B). To find that
Progressive's claim is one "under the terms of [the] Plan," says Anthem, it is
sufficient that the allegations in the Complaint implicate coverage and benefits
under the Volt Plan. (Def. Reply at 10). Progressive, it says, seeks Plan benefits,

which it cannot recover unless B.G., the plan member, is entitled to them. (Def. Reply at 10-11).

For that proposition, Anthem cites *Elite Orthopedic & Sports Med. PA v. Aetna Ins. Co.*, No. CV146175KSHCLW, 2015 WL 5770474 (D.N.J. Sept. 30, 2015). In *Elite Orthopedic*, an out-of-network provider alleged that the claims administrator, Aetna, "'pre-certified and authorized'" it to perform surgery on two patients. 2015 WL 5770474 at *1. Aetna then refused to pay for the surgeries in full. *Id.* at *1. Although it had assignments of the patients' right to payment, Elite based its claims on a breach of an alleged contract between itself and Aetna. *Id.* at *2.

Aetna removed the case to federal court, asserting that the out-of-network provider's claims were preempted by Section 502(a) of ERISA. *Ibid.* Elite Orthopedic then filed a motion to remand, arguing that "Aetna's pre-certification and authorization created separate, independent contracts, apart from the insureds' health plans, in which Aetna promised to reimburse Elite Orthopedic for the medical services it provided, and assert[ed] that Aetna breached those contracts by refusing to pay in full." *Id.* at *1-2.

The parties' arguments before the District Court focused on derivative standing. *Id.* at 3. Aetna claimed that the patient's assignment of payment of benefits conferred derivative standing on Elite Orthopedic, bringing Elite under the Plan umbrella. *Ibid.* Elite Orthopedic replied that "a limited assignment of the right to receive payment is insufficient to confer it with derivative standing." *Ibid.*

The court rejected Elite Orthopedic's argument, citing *N.J. Brain & Spine Ctr. Id.* at *3. In that case, the parties were in the more traditional alignment: the provider claiming it possessed standing to sue *via* an assignment, and the insurer denying it. The Third Circuit held that "when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)." *N.J. Brain & Spine Ctr.*, 801 F.3d at 372.

In the *Elite* court's view, Elite Orthopedic must have been suing pursuant to the assignments, because it saw no alternative:

> Elite Orthopedic for all purposes concedes that the assignments were for the payment of benefits when it argues that the two assignments were given so that checks would be mailed to the office rather than the patients. . . The contention that Elite's breach of contract claims are not founded on the assignment but on Aetna's pre-certification is unpersuasive. The breach of contract claims obviously look for recovery of insurance benefits under the insureds' health plan, and so they fall within the scope of § 502(a).

*Ibid.* (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987))

Anthem's reliance on *Elite Orthopedic* is misplaced, because the case is distinguishable and confined to its facts. *See Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, No. CV 16-01649, 2017 WL 751851, *10 n.7 (D.N.J. Feb. 27, 2017)(declining to extend *Elite Orthopedic* and noting that the court "did not provide an in-depth analysis to support its conclusion"). *Elite Orthopedic* concluded, based on Third Circuit precedent, that the assignments were valid. No anti-assignment provision was present.

Here, by contrast, an anti-assignment provision renders the purported assignments ineffective; it is as if there were no assignments at all. Moreover, Progressive explicitly disclaims any attempt to assert the rights of its patient, B.G. It purports to assert its own rights under theories of contract and quasi-contract. Those claims have some facial vulnerability, and may or may not have any validity as a matter of state law. But this Court cannot conclude, contrary to all appearances and Progressive's own disclaimer, that Progressive must "really" be asserting the rights of its patient, B.G.

In short, Anthem has not established *Pascack* prong 1, or either of its subparts. For this reason alone, I am compelled to find that the court lacks subject matter jurisdiction and remand the case. I do not reach *Pascack* prong 2.

**B. Progressive's Request for Attorney's fees**

In connection with its motion to remand, Progressive requests attorney's fees pursuant to 28 U.S.C. § 1447(c). This part of Progressive's motion argues that Anthem did not have a reasonable basis for removing the complaint because it must have been aware of the *Pascack* standard, and the prior adverse decision in *Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, No. CV 16-01649, 2017 WL 751851 (D.N.J. Feb. 27, 2017), which rejected parallel preemption arguments. (Pl. Remand Brf. 21–23).

The Court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Under the circumstances, I cannot say that Anthem "lacked an objectively reasonable basis for seeking removal." *See Martin,* 546 U.S. at 141. Although I agree that jurisdiction is lacking and that the prior decision in *Progressive Spine & Orthopaedics, LLC* is instructive on the point, Anthem's removal of this action was based on ERISA preemption, a complex area of law. *See Kollman v. Hewitt Assocs., LLC,* 487 F.3d 139, 147 (3d Cir. 2007) ("It is no secret to judges and lawyers that the courts have struggled with the scope of ERISA preemption"). The issue is fairly debatable. It is plausible that Progressive's position was asserted in the belief that it had current legal support, or as part of a good faith argument for an extension of existing law.

Progressive's motion for attorney's fees is therefore denied.

## V. Conclusion

For the foregoing reasons, I hold that Anthem has failed to satisfy its burden of showing that the Court has subject matter jurisdiction of this case. Accordingly, because ERISA complete preemption does not apply, removal was not proper pursuant to 28 U.S.C. § 1441.

Progressive's cross-motion to remand is granted, but its motion for attorney's fees is denied. Because the Court lacks subject matter jurisdiction, Anthem's motion to dismiss is denied as moot.

Dated: September 11, 2017

**Kevin McNulty**
**United States District Judge**